IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOBLO'S INC., dba TRINO'S LOUNGE and PABLO SANCHEZ,<br><br>      Plaintiffs,<br><br>   v.<br><br>THE BURLINGTON INSURANCE COMPANY, INC. and DOES 1 through 50 inclusive,<br><br>      Defendants.<br>_____/ | No. 2:07-CV-00894 JAM DAD<br><br><u>ORDER GRANTING MOTION FOR</u><br><u>     SUMMARY JUDGMENT</u> |

   Boblo's, Inc., dba Trino's Lounge ("Trino's Lounge") and Pablo Sanchez ("Sanchez") (collectively "Plaintiffs") brought a state court action against Burlington Insurance Company ("Burlington") claiming that Burlington wrongly refused to defend and indemnify Plaintiffs in an underlying action arising out of an altercation between an employee of Trino's Lounge and one of its patrons.  Burlington removed the action to this Court on the basis of diversity.  Burlington now moves for summary

judgment or, in the alternative, summary adjudication pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. Plaintiffs oppose the motion. For the reasons set forth below, Burlington's motion is GRANTED.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs own and operate Trino's Lounge, a bar/restaurant located in Sacramento County. Plaintiffs purchased a liability insurance policy ("Policy") from Burlington covering the operations at Trino's Lounge for the period January 4, 2003 to January 3, 2004. The Policy included a commercial general liability ("CGL") coverage part, with insurance limits of $1,000,000 each occurrence and $1,000,000 general aggregate. As to liability for "bodily injury," the Policy provides that Burlington "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which the insurance applies" ("Coverage A"). The Policy provides that "this insurance applies to 'bodily injury' . . . only if: (1) The "bodily injury" . . . is caused by an 'occurrence,' " which the policy defines as "an accident." As to liability for "personal and advertising injury," the Policy provides that Burlington "will pay for those sums that the

---

[1] Because oral argument will not be of material assistance, the Court orders this matter submitted on the briefs. E.D. Cal. L.R. 78-230(h).

insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies" ("Coverage B").  The Policy defines "personal and advertising injury" as "injury, including consequential 'bodily injury,' arising out of . . . false arrest, detention or imprisonment," among others.  As to exclusions, the Policy provides that this insurance does not apply to "bodily injury" "expected or intended from the standpoint of the insured" ("Exclusion a. of Coverage A").  This exclusion, however, "does not apply to 'bodily injury' resulting from the use of reasonable force to protect persons or property."

   The Policy also contains an endorsement titled "EXCLUSION-ASSAULT OR BATTERY," which modifies the insurance provided under the CGL coverage part (the "endorsement").  Specifically, the endorsement provides that insurance under the CGL coverage part does not apply to "bodily injury" or "personal or advertising injury" "expected or intended from the standpoint of any insured" or "bodily injury" "[a]rising out of assault or battery, or out of any act or omission in connection with the prevention or suppression of an assault or battery" ("A&B Exclusion").  The endorsement further provides that it replaces the language of Exclusion a. of Coverage A (Section I) and adds Exclusion a.(11) to Coverage B (Section I).

3

On September 14, 2003, Domonick Robles ("Robles") was injured during an altercation outside Trino's Lounge.  On November 10, 2003, Robles filed an action against Trino's Lounge in Sacramento Superior Court ("underlying action"), alleging negligence and intentional tort claims, including claims for assault, battery and false imprisonment.  In his complaint, Robles alleged that he was physically attacked by a Trino's Lounge bouncer after he was refused entry to the establishment. Specifically, Robles alleged that a Trino's Lounge bouncer struck him with a closed fist, handcuffed him, and sprayed him with a noxious substance following a verbal altercation.

On December 4, 2003, Burlington received notice of the underlying action and a copy of the complaint.  On December 5, 2003, Burlington sent a letter to Sanchez disclaiming coverage on the basis that the A&B Exclusion contained in the endorsement precluded any potential for coverage.  In this letter, Burlington referenced the A&B Exclusion and explained that it was disclaiming coverage because the allegations in the underlying action indicated that Robles had been attacked by a Trino's Lounge employee during the course and scope of his duties.  Burlington requested Plaintiffs to provide any additional documentation that they believed might effect this decision.

4

On December 16, 2003, Burlington received a letter from Plaintiffs' counsel requesting reconsideration of its decision to disclaim coverage.  In this letter, Plaintiffs' counsel asserted that Burlington had a duty to defend against the underlying action because Robles was the aggressor and the Trino's Lounge bouncer acted reasonable.  In support of this assertion, Plaintiffs' counsel referenced Policy language stating that "bodily injury" resulting from the use of reasonable force to protect persons and property is not excluded from coverage.  On December 23, 2003, Burlington sent a letter to Plaintiffs' counsel explaining that his reliance on this language was misplaced insofar as the A&B Exclusion expressly modified this provision of the Policy.  Burlington further explained that under the A&B Exclusion there was no potential for coverage, even if Robles was the aggressor and the Trino's Lounge bouncer acted reasonably, because the underlying action arose out of an assault and battery and an act or omission in connection with the prevention or suppression of an assault and battery.  Burlington, again, requested Plaintiffs to provide additional information that they believed might effect Burlington's decision.  Plaintiffs did not respond to this request for additional information.

On February 28, 2006, Plaintiffs' counsel sent a letter to Burlington demanding that it indemnify Plaintiffs for a judgment

entered against them in the underlying action.  On March 8, 2007, Burlington refused this demand.  On April 12, 2007, Plaintiffs filed the instant action against Burlington in Sacramento Superior Court.  On May 11, 2007, Burlington removed the action to this Court on the basis of diversity.  On May 30, 2008, Burlington filed a motion for summary judgment or, in the alternative, summary adjudication.  On July 7, 2008, Plaintiffs filed an opposition.[2]

## II. OPINION

A.  Legal Standard

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party sustains its burden, the burden then shifts to the nonmoving party to go beyond the pleadings and by his or her own affidavits, or by the depositions, answers to

---

[2] The Court notes that Plaintiffs filed their opposition four days late and provided no explanation to this Court for the late filing.  The Court has, nevertheless, considered Plaintiffs' arguments in opposition to Defendants' motion for summary judgment.

interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  Id. at 324.  Summary judgment is proper if, viewing the evidence and the inferences therefrom in the light most favorable to the nonmoving party, there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law.  Valandingham v. Bojorquez, 866 F.2d 1135, 1137 (9th Cir. 1989).  "Where the terms and conditions of an insurance policy constitute the entire agreement between the parties, its interpretation is essentially a question of law, particularly well-suited for summary judgment."  Flintkote Co. v. General Accident Assurance Co., 410 F.Supp.2d 875, 881 (N.D. Cal. 2006) (internal quotation marks omitted).

B.   Breach of Contract Claim

With respect to Plaintiffs' breach of contract claim, the central issue is whether Burlington had a duty to defend or indemnify Plaintiffs against the underlying action.  The resolution of this issue turns on the interpretation of an insurance contract, a question of law.  Conestoga Servs. Corp. v. Executive Risk Indem., Inc., 312 F.3d 976, 981 (9th Cir. 2002).  Not surprisingly, the parties advance opposing positions.  Burlington contends that it did not have a duty to defend or indemnify Plaintiffs against the underlying action because the A&B Exclusion precluded any potential for coverage.

Specifically, Burlington contends that coverage was properly denied because the A&B Exclusion precludes coverage for "bodily injury" and "personal and advertising injury" "arising out of assault or battery, or out of any act or omission in connection with the prevention or suppression of an assault or battery." Plaintiffs, on the other hand, contend that the A&B Exclusion does not apply because the language of the endorsement does not "clearly state how the endorsement relates to the insurance contract as a whole" and because "the endorsement was not provided to [Sanchez] until approximately three months after the policy was in effect."  Alternatively, Plaintiffs contend that, even assuming the A&B Exclusion applies, summary judgment is inappropriate because the injuries alleged in the underlying action did not arise out of an assault or battery.  The Court finds Plaintiffs' contentions to be unsupported by any evidence and without merit.

   Because this action was brought in federal district court under diversity jurisdiction, the substantive law of California applies.  <u>St. Paul Fire and Marine Ins. Co. v. Weiner</u>, 606 F.2d 864, 867 (9th Cir. 1979).  "As the California Supreme Court has observed, '[w]hile insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply.' " <u>Conestoga Servs.</u>, 312 F.3d at 981 (quoting <u>La Jolla Beach & Tennis Club, Inc. v. Indus.</u>

Indem. Co., 9 Cal.4th 27, 37 (1995)). "With insurance contracts, then, as with all others, '[t]he fundamental goal of contractual interpretation is to give effect to the mutual intent of the parties.' " Conestoga Servs., 312 F.3d at 981 (quoting La Jolla Beach & Tennis Club, 9 Cal.4th at 37). The rules governing policy interpretation require a court to look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it. Waller v. Truck Exchange, Inc., 11 Cal.4th 1, 18 (1995). If contractual language is clear and explicit, it governs. Id. "Courts will not strain to create an ambiguity where none exists." Id. at 18-19.

It is well-settled that an insurer has a duty to defend an insured if it becomes aware of, or if the third party lawsuit pleads, facts giving rise to the potential for coverage under the insuring agreement. Waller, 11 Cal.4th at 19. This duty is broader than an insurer's duty to indemnify and applies even to claims that are "groundless, false, or fraudulent" and is separate from and broader than the insurer's duty to indemnify. Id. However, where no possibility of coverage exists, there is no duty to defend. Id. This determination is made "in the first instance by comparing the allegations of the complaint with the terms of the policy." Id. Facts extrinsic to the complaint are considered if they either reveal a possibility

that the claim may fall within the coverage of the policy, or eliminate the possibility of coverage despite the potential for coverage indicated on the face of the complaint.  Id.  An insurer may refuse to defend against a lawsuit when "there is no potential for coverage on the basis of the facts known to the insurer at the time of tender and the insurer has made an informed decision on the basis of the third party complaint and the extrinsic facts known to it at the time of tender that there is no potential for coverage."  Zelda, Inc. v. Northland Ins. Co., 56 Cal.App.4th 1252, 1266 (1997) (internal quotation marks omitted).  To establish the absence of a duty to defend on summary judgment, an insurer must show that "the underlying claim cannot come within the policy coverage by virtue of the scope of the insuring clause or the breadth of an exclusion."  Montrose Chemical Corp. v. Superior Court, 6 Cal.4th 287, 301 (1993).  Finally, "while an insurer has a duty to defend suits which potentially seek covered damages, it has a duty to indemnify only where a judgment has been entered on a theory which is actually (not potentially) covered by the policy."  Collin v. American Empire Ins. Co., 21 Cal.App.4th 787, 803 (1994).

In the present case, Burlington does not contend that the underlying injuries were not caused by an occurrence within the Policy's insuring provisions; rather, Burlington contends that

there is no potential for coverage under the Policy based on the A&B Exclusion. The Court agrees. To the extent that Plaintiffs argue that the A&B Exclusion does not preclude the possibility for coverage, the Court disagrees. First, contrary to Plaintiffs' assertion, the language of the endorsement clearly states how it relates to the insurance contract as a whole. The endorsement is prefaced by the following instruction: "THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY." The endorsement specifically states that it changes the Policy by modifying the insurance provided under the CGL coverage part. Specifically, the endorsement states that it replaces Exclusion a. of Coverage A (Section I) and adds Exclusion a.(11) to Coverage B (Section I). In other words, the A&B Exclusion modifies coverage under both Coverage A and Coverage B of the CGL coverage part.[3] Second, the Court is not persuaded by Plaintiffs' argument that the endorsement does not apply because it was not provided to Sanchez until approximately three months after the Policy was in effect. Notably, Plaintiffs do not dispute the fact that the A&B Exclusion was in the copy of the Policy that they received. Additionally, the undisputed facts

---

[3] To the extent that Plaintiffs assert that the Policy is not marked in any manner to place them on notice of the A&B Exclusion, the Court disagrees. The Policy expressly states: "This policy consists of: . . . One or more coverage parts. A coverage part consists of: One or more coverage forms [and] Applicable forms and endorsements."

reveal that the Policy, as received, was the Policy in effect at the time of the incident which Plaintiffs contend gave rise to a duty to defend. This incident occurred in September 2003, nearly six months after Plaintiffs claim they received a copy of the Policy. At no time during these six months did Plaintiffs ever indicate that they did not want the A&B Exclusion as part of their Policy. Moreover, Plaintiffs were under a duty to read their Policy. Fields v. Blue Shield of California, 163 Cal.App.3d 570, 578 (1985). Third, the undisputed facts known to Burlington at the time of tender indicated that there was no potential for coverage under the Policy insofar as the "bodily injury" alleged in the underlying action arose from an incident involving an assault and battery. See Zelda, 56 Cal.App.4th at 1261-62. It is undisputed that Plaintiffs' counsel informed Burlington prior to the inception of the underlying action that Plaintiffs believed Robles was the aggressor and was "physically engaged" by a bystander coming to the aide of the Trino's Lounge bouncer. No other information was ever provided by Plaintiffs to Burlington which arguably demonstrated that the A&B Exclusion did not apply. To the extent that Plaintiffs now argue that there was a potential for coverage under the Policy because the Trino's Lounge bouncer acted lawfully, the Court disagrees. The language of the endorsement expressly excludes coverage for "bodily injury" or "personal or advertising injury" "[a]rising

out of assault or battery, or out of any act or omission in connection with the prevention or suppression of an assault or battery." There is no exception for "bodily injury" resulting from the use of lawful force. As such, there was no potential for coverage under the Policy even if Robles was the aggressor and the bouncer acted lawfully. See id. at 1261-62. Nor was there any potential for coverage under the Policy for an act of assault and battery committed by a non-insured bystander. See id. Finally, the Court finds no evidentiary support or triable issue of fact with respect to Plaintiffs' contention that Burlington failed to properly investigate the facts of the underlying action. Since the A&B Exclusion applied to the underlying action, Burlington did not breach the terms of the Policy because it disclaimed coverage and did not owe a duty to defend or indemnify Plaintiffs in the underlying action. Burlington determined whether it had a duty to defend by first comparing the allegations of the complaint in the underlying action with the terms of the Policy as the law obligated Burlington to do. See id. at 1259. Additionally, Burlington requested from Plaintiffs' counsel any additional information which may affect coverage. As indicated above, the additional facts provided by Plaintiffs' counsel did not alter, but only reinforced Burlington's determination that the A&B Exclusion applied. Despite its second denial of Plaintiffs' tender,

Burlington again asked Plaintiffs' counsel to provide any additional information which he believed would affect Burlington's determination that there was no potential for coverage under the Policy.  No additional information was provided.  In sum, the undisputed evidence in this case reveals that Burlington did not breach the terms of the Policy by failing to investigate the facts of the underlying action.  To the extent Plaintiffs claim for breach of contract is predicated on an alleged failure to investigate, it must fail.

For the foregoing reasons, the Court grants summary judgment in favor of Burlington on Plaintiffs' breach of contract claim.

C.   Additional Claims

Because the Policy did not provide any potential for coverage, and thus did not require Burlington to defend or indemnify against the underlying action, the Court grants summary judgment in favor of Burlington on Plaintiffs' other claims.  In the absence of the potential for coverage and a duty to defend, Plaintiffs have no claim for breach of the implied covenant of good faith and fair dealing or punitive damages.  Waller, 11 Cal.4th at 36; American Medical Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 244 F.3d 715, 720 (9th Cir. 2001).  In addition, Burlington is entitled to summary judgment on Plaintiffs' declaratory relief claim insofar as this claim

seeks a determination of the "true meaning and interpretation" of the Policy.

### III. ORDER

For the reasons set forth above, Burlington's motion for summary judgment is GRANTED.

IT IS SO ORDERED.

Dated:  August 5, 2008

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE